UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Rosemary Delgado,

                Plaintiff,

                                      Civ. No. 07-2186 (RHK/RLE)
                                      **MEMORANDUM OPINION AND**
                                      **ORDER**

v.

Rodney Hajicek, a detective and police officer
employed by the East Grand Forks Police
Department, in both his individual and official
capacities, *et al.*,

                Defendants.

---

DeWayne A. Johnston, Johnston Law Office, Grand Forks, North Dakota, David C. Thompson, David C. Thompson, PC, Grand Forks, North Dakota, for Plaintiff.

Jon K. Iverson, Susan M. Tindal, Iverson Reuvers, LLC, Bloomington, Minnesota, for Defendants.

---

## INTRODUCTION

In this action, Plaintiff Rosemary Delgado has sued Rodney Hajicek, a police officer employed by the City of East Grand Forks, Minnesota, as well as several "John Doe" East Grand Forks police officers, alleging deprivations of her Fourth Amendment rights. Defendants now move for summary judgment. For the reasons set forth below, the Court will grant Defendants' Motion.[1]

---

[1] The Motion is brought on behalf of Hajicek and each of the "John Doe" Defendants. Delgado has filed a Motion for Leave to Amend her Complaint to dismiss John Does 2 through 6 and to substitute East Grand Forks police officer Chris Olson for John Doe 1. Although the

## BACKGROUND

Delgado is a resident of Texas who sometimes travels to the Grand Forks area during the summer to perform agricultural work. (Delgado Dep. at 6, 19.) She spends a few months "working in the fields" there before returning to Texas. (Id. at 21.)

While staying in East Grand Forks during the summer of 2000, Delgado registered to rent videos at a gas station/convenience store called East Grand Station. (Pl. Interrogatory Responses ¶ 6.) In April 2001, the movie "The Watcher" was rented from East Grand Station under Delgado's account. (Delgado Dep. at 23-24, 28; Hajicek Dep. Ex. 1.) Although East Grand Station believed that Delgado had rented the movie, it was her nephew Rodger who had actually done so. (Delgado Dep. at 24, 28; Hajicek Dep. Ex. 1.) The movie was never returned.

On May 29, 2001, East Grand Station sent a certified letter to Delgado demanding the return of the video. (Hajicek Dep. Ex. 1.) The letter was sent to the address East Grand Station had on file for Delgado, which was actually her mother's address. (Delgado Dep. at 28-32; Hajicek Dep. Ex. 1.) The letter went unclaimed and, ultimately, was returned to East Grand Station by the post office because Delgado was not living there when delivery was attempted. (Id.)

On July 2, 2001, East Grand Station contacted the East Grand Forks police

---

Motion was filed beyond the deadline for amendments in the Court's Scheduling Order and Delgado has failed to show any good cause for her delay, the Court will grant the Motion. Accordingly, the Court treats the Motion as if it were filed by Hajicek and Olson.

department concerning the overdue video.  (Hajicek Dep. at 36 & Ex. 1.)  The matter was assigned to Hajicek.  (Id. at 37.)  After reviewing the information provided by the store, on July 11, 2001, Hajicek issued a citation to Delgado for theft of the video.  (Id. at 38-39 & Ex. 4.)  The citation indicated that Delgado was to make an initial appearance on the charge in the Polk County Courthouse in Crookston, Minnesota, on July 24, 2001.  (Id. Ex. 4.)  The citation was mailed to Delgado at the same address to which East Grand Station's certified letter had been sent.  (Delgado Dep. at 24.)

Delgado's mother received the citation in the mail in East Grand Forks and forwarded it to Delgado in Texas.  (Id. at 24.)  Upon receiving the citation, Delgado called Hajicek, who told her that she should call East Grand Station to "clear up" the matter.  (Id. at 25, 33.)  She then telephoned the store and, after speaking with its owner, she apparently was told that the matter had been straightened out and that she was not responsible for the video.  (Id. at 25, 34.)  She then called Hajicek again and informed him that she had been "cleared up" by East Grand Station, to which Hajicek replied "okay."  (Id. at 35.)  Delgado made no attempt to contact the Polk County court.  (Id. at 36.)

Apparently believing that the matter had been resolved, Delgado did not show up for the July 24, 2001, initial appearance.  The matter had not been dismissed, however; as a result of her failure to appear, the court issued an Order requiring Delgado to appear on August 14, 2001. (Delgado Dep. Ex. 5; Hajicek Dep. Ex. 4.)  Delgado apparently never received that Order, and she once again failed to appear as ordered by the court.

(Delgado Dep. at 39-40 & Ex. 5.) The court then issued yet another Order directing Delgado to appear on September 11, 2001, and further warned her that a warrant for her arrest would be issued if she failed to appear once again. (Delgado Dep. Ex. 6.)

This time, Delgado received the court's Order in Texas; upon receipt, she called Hajicek, but she did not reach him. (Delgado Dep. at 36, 41-42.) She left a message with another police officer, asking for Hajicek to call her back. (Id. at 36, 42.) She never heard back from Hajicek, however. (Id. at 42.) Nevertheless, she did not contact the court or appear at the September 11, 2001, hearing. (Id. at 36, 42.) As a result, on September 18, 2001, the Polk County court issued a warrant for Delgado's arrest. (Hajicek Dep. Ex. 4.) Since she was not then residing in Minnesota, the arrest warrant was not executed at that time.

The following summer, Delgado traveled to East Grand Forks to perform agricultural work. On July 31, 2002, she was staying at a Howard Johnson's hotel with her five-year-old son when police officers, including Olson (but not Hajicek), arrived at her door and stated that they had a warrant for her arrest. (Delgado Dep. at 44.)[2] Olson took Delgado into custody. (Olson Dep. at 45 & Ex. 1.) Delgado was "tightly" handcuffed and placed into a squad car. (Delgado Dep. at 44.) She told Olson that the

---

[2] There is some suggestion in Delgado's brief that she was arrested due to her association with several other individuals staying at the Howard Johnson's who were arrested that night for drug possession. (See Mem. in Opp'n at 10-11.) She later admits, however, that she "was arrested on a warrant based on her failure to appear in court." (Id. at 21.) That is consistent with Delgado's booking sheet, which indicates that she was arrested for "Warrant – Theft." (Hajicek Dep. Ex. 1.)

handcuffs were hurting her wrists and asked him to loosed them, to no avail. (Id. at 44-45, 51.) She was then transported to the East Grand Forks police station, where the handcuffs were removed. (Id. at 46-48, 51.) A friend later posted bond for Delgado and she was released. (Id. at 52.)

A few days later, East Grand Station informed the Polk County Court Administrator that Delgado was not responsible for the overdue video. (Delgado Dep. Ex. 7.) Then, on August 15, 2002, Hajicek wrote to the Court Administrator, stating "City Attorney Ron Galstad requests that I send a letter asking Court Administration to dismiss the ticket for Rosemary Delgado. So, please dismiss." (Hajicek Dep. Ex. 1.) The criminal case was then dismissed.

Approximately five years later, on May 4, 2007, Delgado commenced the instant action against Hajicek, the "John Doe" police officers, and East Grand Station.[3] She alleged two main claims in her Complaint, both of which arise under the Fourth Amendment of the United States Constitution: "unlawful arrest" (Count 1) and excessive force (Count 2). She also alleged in Count 3 that East Grand Station was liable for her allegedly unlawful arrest, but she later voluntarily dismissed that claim. Defendants now move for summary judgment on the remaining claims in the Complaint (Counts 1 and 2).

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the

---

[3] No explanation for Delgado's lengthy delay in filing suit is evident from the record.

nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.    The official-capacity claims must be dismissed.**

Delgado has sued Hajicek and Olson in both their individual and official capacities.  Although no party has addressed the official-capacity claims, the Court concludes that those claims must be dismissed.

A suit against a public employee in his or her official capacity "is merely a suit against the public employer."  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)).  A Section-1983 action against a public employer can succeed only if the plaintiff demonstrates, *inter alia*,

that its employees were "implement[ing] or execut[ing] an unconstitutional policy or custom." Id. In the absence of evidence indicating that such a policy or custom exists, summary judgment against the plaintiff is appropriate. Id.

Here, Delgado has failed not only to proffer evidence of an unconstitutional policy or custom, but she has failed to even *plead* that such a policy or custom exists. Accordingly, her official-capacity claims must be dismissed. Id.; see also D.E.S. v. Kohrs, 187 F.3d 641 (Table), 1999 WL 506121, at *2 (8th Cir. 1999) (unpublished) (affirming dismissal of official-capacity claims where plaintiff had failed to plead unconstitutional policy or custom).

## II.     The individual-capacity claims also must be dismissed.

### A.     No triable issue exists on the false-arrest claim (Count 1)

In Count 1 of her Complaint, Delgado appeared to assert a relatively straightforward Fourth-Amendment claim. In the face of Defendants' Motion for Summary Judgment, however, Delgado – or, perhaps more accurately, her counsel – has attempted to obfuscate the precise nature of that claim, apparently hoping that the resulting confusion would permit that claim to survive summary judgment. For example, Delgado now purports to assert that her hotel room was unlawfully *searched* on the date she was arrested. (See Mem. in Opp'n at 30-32.) Even under the most liberal reading of the Complaint, however, Delgado nowhere remotely suggested that she was alleging a claim arising out of an unlawful search by Defendants. Indeed, she did not mention the search of her hotel room when reciting the events surrounding her arrest (see Compl.

7

¶¶ 26-30), nor did she mention the search anywhere in Count 1 (see id. ¶¶ 39-47), which is simply entitled "Unlawful Arrest." The most Delgado has alleged in Count 1 is that (1) Hajicek violated her Fourth-Amendment rights when he issued the theft citation without probable cause and (2) her Fourth-Amendment rights were violated when she was arrested on the warrant for failure to appear. (See Compl. ¶¶ 40-47.) Regardless of which theory she relies on, Defendants are entitled to summary judgment on Count 1.

Delgado's first theory, which she characterizes in several different ways in her Opposition, is that Hajicek violated her Fourth-Amendment rights by "maliciously prosecuting" her for theft. (See Mem. in Opp'n at 16-26.) Yet, one of the cases Delgado cites – which she claims is "directly in point" with the instant case (Mem. in Opp'n at 17) – demonstrates why this claim cannot stand: the issuance of the theft citation by Hajicek was not a Fourth-Amendment "seizure." In DePiero v. City of Macedonia, 180 F.3d 770 (6th Cir. 1999), the plaintiff was issued a parking citation, and a court hearing on the citation was scheduled for several weeks later. When the plaintiff failed to appear at that hearing, a summons was mailed to his home address ordering him to appear at a subsequent hearing. The summons warned the plaintiff that his failure to appear could result in the issuance of an arrest warrant. The plaintiff failed to appear at the subsequent hearing, and a warrant was issued for his arrest. The plaintiff was later stopped for a traffic offense and taken into custody on the outstanding arrest warrant. He was convicted of the offense in the citation, but his conviction was overturned on appeal. Id. at 774-75.

The plaintiff then commenced a Section-1983 action alleging, *inter alia*, that his Fourth-Amendment rights were violated because there existed no probable cause to issue the citation. The district court dismissed that claim, and the Sixth Circuit affirmed. In language equally applicable here, the court stated:

> Plaintiff submits that . . . the issuance of a summons alone, without any face-to-face encounter, may constitute a seizure of the person. Plaintiff relies upon Justice Ginsburg's concurrence in Albright v. Oliver, 510 U.S. 266, 277-79 (1994), and the decision of the Sixth Circuit in Bacon v. Patera, 772 F.2d 259, 265 (6th Cir. 1985), for the proposition that a Fourth Amendment claim for initiating criminal charges without probable cause may be brought in a case where the police use a summons in lieu of an arrest. Both Albright and Bacon are distinguishable from plaintiff's own predicament. Each of the cited cases addressed a situation in which the plaintiff voluntarily responded to a summons or arrest warrant, answered the charges against him, and was then released on bond in lieu of remaining incarcerated until trial. Plaintiff cannot claim issuance of the traffic ticket effected a "seizure" because upon appearing to answer the charges in the ticket, he would have been afforded a trial. On the date he was issued the parking ticket, he was "free to leave." As a result, plaintiff has no § 1983 claim against [the officer] for issuance of the ticket. *It was not until he failed to appear for the hearing on the traffic citation that an arrest warrant or summons sufficient to constitute a "seizure" . . . would have been, and was in fact, issued.*

Id. at 789 (emphasis added) (citations omitted).

The same is true in this case. Delgado simply cannot state a Fourth-Amendment claim based upon Hajicek issuing the theft citation, even if he lacked probable cause to do so, because the citation was not a "seizure" within the purview of the Fourth Amendment. See id.; Martinez v. Carr, 479 F.3d 1292, 1297, 1299 (10th Cir. 2007) (collecting decisions from the First, Third, Sixth, and Ninth Circuits, and noting that "every court of appeals to address [this] question[] has rejected Fourth Amendment claims like"

9

Delgado's; "We conclude that the issuance of a citation, even under threat of jail if not accepted, does not rise to the level of a Fourth Amendment seizure."); Mantz v. Chain, 239 F. Supp. 2d 486, 503 (D.N.J. 2002) ("the issuance of a summons requiring a criminal defendant to appear in court on a specific date does not, by itself, amount to a 'seizure' under the Fourth Amendment").[4]

Delgado's second theory fares no better. She alleges that she was "falsely" arrested on the warrant that issued due to her failure to answer the theft citation which, in turn, purportedly lacked probable cause. (See Mem. in Opp'n at 21 ("Plaintiff was arrested on a warrant based on her failure to appear in court, with this failure to appear having proximately derived from a citation which had been issued by . . . Hajicek in the absence of probable cause.").) Yet, the only person named as a Defendant in Count 1 is Hajicek, and there is no dispute that Hajicek *was not involved in the issuance of the bench warrant*. Under these circumstances, Delgado's claim must fail. See DePiero, 180 F.3d at 789 ("It was not until [the plaintiff] failed to appear for the hearing on the traffic

---

[4] As noted in DePiero, the idea that issuance of a summons compelling a court appearance to answer criminal charges can be a "seizure" for Fourth-Amendment purposes was espoused by Justice Ginsburg in her concurrence in Albright. Yet, "[n]otwithstanding the eminence of its sponsor, the view that an obligation to appear in court to face criminal charges constitutes a Fourth Amendment seizure is not the law. No other Justice joined Justice Ginsburg's opinion, and the question . . . remains unresolved by the Supreme Court." Nieves v. McSweeney, 241 F.3d 46, 55-56 (1st Cir. 2001) (citations omitted). Notably, the Eighth Circuit has expressed skepticism of Justice Ginsburg's concurrence in Albright. See Jefferson v. City of Omaha Police Dep't, 335 F.3d 804, 806 (8th Cir. 2003) (declining to address the issue but noting that "several of our sister circuits have been disinclined to expand fourth-amendment law in the direction that Justice Ginsburg suggested"); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 651 (8th Cir. 2001) (noting that "[t]his circuit has never held" that an obligation to appear in court amounts to a Fourth-Amendment seizure).

citation that an arrest warrant [was] issued. *Officer Nicholl had no role in the issuance of the bench warrant, so plaintiff cannot maintain a claim under § 1983 against him for such a seizure*.") (emphasis added).

In any event, even if Delgado could maintain a Fourth-Amendment claim based on the theft citation or her subsequent arrest, her claim would still falter because it is predicated on a flawed assumption: that Hajicek lacked probable cause to cite her for theft.[5] Probable cause exists if "the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed .. . an offense." Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996). "[T]he probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Id.

Here, there is no dispute that, at the time it reported the matter to the police, East Grand Station believed Delgado had rented the video in question and had not returned it for over a year. There is also no dispute that East Grand Station sent a certified letter to Delgado demanding the return of the video, but that the letter could not be delivered to her because she no longer resided at her last-known address. Finally, there is also no dispute that Hajicek had been made aware of the foregoing before he issued the theft citation. From these facts alone, a reasonable police officer in Hajicek's shoes could have

---

[5] To the extent Delgado attempts to re-label her Fourth-Amendment claim as a malicious-prosecution claim under state law, the claim fails for the same reason. See, e.g., Jenkins v. County of Hennepin, Minn., Civ. No. 06-3625, 2007 WL 2287840, at *10 (D. Minn. Aug. 3, 2007) (Kyle, J.) (malicious prosecution requires "initiation of criminal proceedings against the accused party *without probable cause*") (emphasis added).

concluded that Delgado had taken the video intending to keep it, which is sufficient to establish probable cause for the offense of theft under Minnesota law. See Minn. Stat. § 609.52, subd. 2 (elements of crime of theft); United States v. Nguyen, Crim. No. 06-192, 2006 WL 3486993, at *6-7 (D. Minn. Dec. 4, 2006) (Magnuson, J., adopting Report & Recommendation of Nelson, M.J.) (noting that unlike statements from informants, statements from victims are presumed credible and do not require corroboration in order to establish probable cause).

Delgado argues that she advised Hajicek by telephone that she had not rented the video and that Hajicek ignored that information. (See Mem. in Opp'n at 23.) Yet, it is undisputed that Delgado did not speak with Hajicek until *after* he had already issued the theft citation. (Delgado Dep. at 24.) Hence, the information she allegedly provided to him is irrelevant to whether Hajicek lacked probable cause *at the time the citation was issued*.[6]

Delgado further argues that Hajicek failed to undertake an appropriate investigation before charging her. (See Mem. in Opp'n at 23-26.) Yet, she has nowhere specified what such an investigation was likely to uncover. She baldly alleges that, had Hajicek placed a phone call to East Grand Station prior to issuing the theft citation, he "certainly would have learned that probable cause did not exist upon which to issue the complaint/citation commencing a criminal case for theft" (Mem. in Opp'n at 26), but this

---

[6] It is also undisputed that Hajicek did not know, at the time he issued the citation, that Rodger Delgado had actually rented the video. (Hajicek Dep. at 64.)

argument is purely speculative and lacks any support in the record. Indeed, Delgado has proffered no evidence (other than her own suppositions) indicating that, *prior to* Hajicek charging her with theft, East Grand Station was aware she had not rented the video. On the contrary, East Grand Station appears to have obtained that information only *after* Delgado telephoned the store, which in turn took place only *after* she received notice of the theft citation in the mail from her mother. (Delgado Dep. at 24-25.)[7] Accordingly, there exists no evidentiary basis from which to conclude that a telephone call to East Grand Station would have yielded any information contrary to that Hajicek possessed at the time he charged Delgado with theft.[8]

---

[7] Notably, Delgado has not proffered any evidence (affidavits, deposition transcripts, etc.) from East Grand Station employees indicating what they knew about who rented the video or when they knew it.

[8] Delgado asserts that "[i]n Smithson v. Aldrich, [235 F.3d 1058 (8th Cir. 2000)], the Eighth Circuit found that the police officers involved . . . had violated the plaintiff's Fourth Amendment rights, because those officers had failed to interview all available witnesses before making an arrest." (Mem. in Opp'n at 26.) Delgado misstates the holding in Smithson. At no point in that opinion did the Eighth Circuit hold that a Fourth-Amendment violation had been established due to the officers' failure to interview witnesses or review exculpatory evidence; indeed, the court reached the opposite conclusion. See id. at 1062, 1064 (concluding that the defendants were entitled to qualified immunity on the plaintiff's claims).

The Eighth Circuit *has* held that, when reviewing whether probable cause existed for an arrest, a court should consider both the inculpatory and exculpatory evidence readily available to the police officer. See Kuehl v. Burtis, 173 F.3d 646, 650 (8th Cir. 1999). Yet, there is nothing in the record indicating that Hajicek should have distrusted the information provided by East Grand Station, see id. (noting that, in the absence of contradictory evidence, "an officer may make an arrest if a credible eyewitness claims to have seen the suspect commit the crime"), nor is there any evidence suggesting that an investigation would have uncovered that Delgado did not rent the video.

It could be argued that *after* Delgado informed Hajicek that the matter had been "cleared up" with East Grand Station, he was obliged to investigate and dismiss the charge if probable cause for theft had been vitiated. There is at least arguable support for such a contention. See Thompson v. Olson, 798 F.2d 552, 556 (1st Cir. 1986). Delgado, however, has asserted no such

13

Attempting to manufacture a fact dispute where none exists, Delgado argues that Hajicek offered conflicting statements in his deposition as to whether he had probable cause to charge Delgado with theft. (See Mem. in Opp'n at 18.) The alleged conflict, however, is created out of whole cloth by Delgado. She claims that Hajicek testified in his deposition that "he would not issue a citation without having in his file a *delivered* certified mail demand letter from the video store," but then later changed his story and admitted that he charged Delgado with theft knowing that she had not received East Grand Station's certified letter. (Mem. in Opp'n at 18, 24 (emphasis added).) At no point in Hajicek's testimony, however, did he state that he would require proof of *delivery* of a certified letter before he would issue a theft citation. Rather, he merely stated "there would be no citation issued until at least a certified letter demanding return of the video *was done* by the business." (Hajicek Dep. at 42 (emphasis added).)[9]

For all of the foregoing reasons, the Court concludes as a matter of law that Delgado cannot establish a Fourth-Amendment violation arising out of Hajicek's actions. Accordingly, Hajicek is entitled to summary judgment on Count 1.

### B.    Count 2 fails because Delgado suffered, at most, *de minimis* injuries

In Count 2, Delgado alleges that Olson used excessive force in effecting her arrest.

---

claim in her Complaint.

[9] Delgado argues that because she did not receive the certified letter, Hajicek possessed no evidence indicating that she had the specific intent to commit the crime of theft. (See Mem. in Opp'n at 7-8.) The Court fails to understand how not receiving the letter would have any bearing on whether Delgado had the requisite *mens rea*, since the video was rented long before the letter was sent.

Defendants correctly argue that this claim must be dismissed because Delgado's alleged "injuries" were too insignificant to support her claim.

It is beyond peradventure that the Fourth Amendment precludes the use of excessive force by law-enforcement officers. E.g., Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005). Clearly, some degree of force is necessary to take a person into custody; that force is used during an arrest, therefore, does not *ipso facto* establish a Fourth-Amendment violation. Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003) ("Fourth Amendment jurisprudence has long recognized . . . the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it."). Rather, an excessive-force claim lies only when a plaintiff suffers an "actual injury" resulting from force employed during an arrest. E.g., Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005). Simply put, "not every push or shove by an officer violates the Fourth Amendment," and "a *de minimis* . . . injury is insufficient to support a finding of a constitutional violation." Andrews, 417 F.3d at 818; Crumley, 324 F.3d at 1007.

In support of her excessive-force claim here, Delgado relies only on her assertion that she was handcuffed too tightly and, as a result, she suffered pain and red marks on her wrists. (See Mem. in Opp'n at 29.)[10] There is no dispute that Delgado was only in handcuffs for a short period of time. (See Delgado Dep. at 44-48.) There is also no

---

[10] Delgado also purportedly suffered "severe emotional distress," but she claims that such distress flowed from her arrest, not from Olson's use of force. (See Mem. in Opp'n at 29 (discussing "the emotional turmoil the plaintiff suffered *as a result of the unwarranted arrest*") (emphasis added).) Accordingly, such distress is not an "injury" that may support her *excessive-force* claim.

15

dispute that (1) Delgado suffered no permanent injuries as a result of the handcuffing, (2) the allegedly too-tight handcuffs caused no bruising, but only red lines on Delgado's wrists, and (3) Delgado never sought medical attention for her "injuries." (See id. at 63-65.)  These facts are simply insufficient to support a Fourth-Amendment excessive-force claim.  See, e.g., Crumley, 324 F.3d at 1007-08.

Citing Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993), and McPherson v. Auger, 842 F. Supp. 25 (D. Me. 1994), Delgado makes the incredible argument that Defendants have "ignore[d] published decisional authorities" by suggesting that Delgado's "injuries" were too insignificant to support her claim.  (Mem. in Opp'n at 29.)  Yet it is *Delgado* who has ignored the relevant case law, in particular several *binding* decisions of the Eighth Circuit.  For example, in Crumley, the plaintiff brought an excessive-force claim as a result of too-tight handcuffs that had caused her wrists to bleed.  This Court concluded that the plaintiff's excessive-force claim failed, and the Eighth Circuit affirmed, holding that "for the application of handcuffs to amount to excessive force *there must be something beyond allegations of minor injuries*."  324 F.3d at 1008 (emphasis added).  The Eighth Circuit has reached that same conclusion on several other occasions.  See Hanig, 415 F.3d at 824; Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990) (allegation of "nerve damage" from being handcuffed too tightly insufficient where plaintiff proffered no medical records indicating any long-term injury; "We do not believe [that] allegations of pain as a result of being handcuffed, without some evidence

16

of more permanent injury, are sufficient to support [a] claim of excessive force.").[11] It is disingenuous for Delgado to assail Defendants' argument when it is she who has relied on case law contrary to that emanating from our Court of Appeals.

For the reasons set forth above, the excessive-force claim fails as a matter of law and must be dismissed.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is **ORDERED** that:

1. Plaintiff's Motion for Leave to Amend (Doc. No. 31) is **GRANTED**; and

2. Defendants' Motion for Summary Judgment (Doc. No. 18) is **GRANTED** and Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 12, 2008                          s/Richard H. Kyle
                                             RICHARD H. KYLE
                                             United States District Judge

---

[11] Although Delgado correctly notes that some courts have reached a contrary result, the Eighth Circuit certainly is not alone in reaching this conclusion. See, e.g., Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) (plaintiff who suffered bruising on hands and arms failed to state excessive-force claim because "handcuffing too tightly, without more, does not amount to excessive force"); Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.").